**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NUMBER 19-20551-CR-MORENO**

**UNITED STATES OF AMERICA,**

Plaintiff, **Courtroom 13-3**

vs. **Miami, Florida**

**ERIC LIN,** **January 14, 2020**

Defendant.

---

**CHANGE OF PLEA PROCEEDINGS**
**BEFORE THE HONORABLE FEDERICO A. MORENO**
**UNITED STATES DISTRICT JUDGE**

---

**APPEARANCES:**

**FOR THE GOVERNMENT:** **MARIA K. MEDETIS, AUSA**
United States Attorney's Office
99 Northeast Fourth Street
Miami, Florida 33132
305-961-9010
Fax: 305-530-7976

**FOR THE DEFENDANT:** **CHRISTIAN S. DUNHAM, AFPD**
Federal Public Defender's Office
150 West Flagler Street
Suite 1700
Miami, Florida 33130
305-530-7000
Fax: 305-536-4559

**REPORTED STENOGRAPHICALLY BY:** **GILDA PASTOR-HERNANDEZ, RPR, FPR**
Official United States Court Reporter
Wilkie D. Ferguson Jr. US Courthouse
400 North Miami Avenue - Suite 13-3
Miami, Florida 33128 305-523-5118
gphofficialreporter@gmail.com

TABLE OF CONTENTS

Page

Reporter's Certificate .................................... 21

EXHIBITS

| Exhibits | Marked for Identification | | Received in Evidence | |
|---|---|---|---|---|
| Description | Page | Line | Page | Line |

(The following proceedings were held at 1:48 p.m.)

THE COURT: Good afternoon, everybody. We have a couple of guilty pleas before the calendar call. 19-20551-Criminal, United States of America versus Eric Lin. On behalf of the Government.

MS. MEDETIS: Good afternoon, Your Honor. Maria Medetis on behalf of the United States.

THE COURT: On behalf of the defendant, if the marshals would allow, with Mr. Lin there at the lectern, who do we have?

MR. DUNHAM: Christian Dunham. I'm an Assistant Federal Public Defender on behalf of Mr. Lin who's present.

THE COURT: Okay. By the way, there's also a plea later on with Mr. Gallego who I understand is --

THE COURTROOM DEPUTY: I had checked that.

THE COURT: All right. Look at that. I wanted to make sure they were doing that. Okay.

THE COURTROOM DEPUTY: They're translating.

THE COURT: I know, but I had forgotten.

MR. DUNHAM: Your Honor, may I approach with the executed documents?

THE COURT: No, you may not.

MR. DUNHAM: Okay.

THE COURT: Okay. Mr. Lin, I understand you want to plead guilty. Is that what you want to do, sir?

THE DEFENDANT: Yeah, that's correct, Your Honor.

THE COURT: Okay. Let your lawyer give you a little bit more room, so you can get to the microphone.

Raise your right hand as much as you can.

THE DEFENDANT: Okay.

(The defendant was sworn in by the Court.)

THE DEFENDANT: Yes, I do.

THE COURT: Okay. Lower your hand, please, sir. Tell me your name and your age.

THE DEFENDANT: Eric Lin, age 35.

THE COURT: Do you understand that if you plead guilty, it means no trial, no appeal, no witnesses. Do you understand that?

THE DEFENDANT: Yes, I understand that, Your Honor.

THE COURT: Has anyone forced you or threatened you in order to get you to plead guilty?

THE DEFENDANT: No, Your Honor.

THE COURT: Have you spoken with your lawyer about possible defenses, the consequences of your guilty plea and everything about this case?

THE DEFENDANT: Yes, I have.

THE COURT: Do you need any more time to speak with him before you enter this guilty plea?

THE DEFENDANT: No, I don't.

THE COURT: Is that your signature in the written Plea Agreement that your lawyer has? That's what he wanted to hand

over to me, and that's why I said no.

THE DEFENDANT: Yes, it is.

THE COURT: Did you read it before you signed it?

THE DEFENDANT: Yes, I have.

THE COURT: Now you can give it to us.

MR. DUNHAM: Okay.

THE COURT: Okay. In this Plea Agreement which your lawyer has been able to obtain for you, you have agreed to plead guilty to -- which count?

MS. MEDETIS: Count 4, Your Honor.

THE COURT: -- to Count 4 of the Indictment which says that on June 12, 2019 in Miami-Dade County in the Southern District of Florida and elsewhere, you, the defendant, also known as Jake Howard and Eric Schopenhauer, knowingly transmitted in interstate commerce a communication containing any threat to injure the person of another -- the person was an individual with the initials CI -- in that in a Facebook message sent through the Internet to this fellow or gal named CI, you stated in part, "How about we play a real world Game of Thrones. You lose and I cut you at your knees, watch you bleed before I cut your tongue out, shove it up your" -- and then it's an expletive indicating a female anatomy -- "and then decapitate that American-hating Spic head of yours," and that violated a federal law.

Did you do that?

THE DEFENDANT: Yes, I did, Your Honor.

THE COURT: Why did you do that?

THE DEFENDANT: I don't know. It was kind of -- I guess we got into some kind of argument at a bar about some kind of provocative sexual comment I made at her and, I don't know, for some reason I felt like I should go online and just harass her and threaten her, I guess, because -- I don't know.

THE COURT: How long have you known her?

THE DEFENDANT: Well, I was going to that bar for about six or seven months.

THE COURT: And she was there all the time?

THE DEFENDANT: Yes, she was there all the time. I would, you know, sometimes try to talk to her. Sometimes we would make very brief conversation, but just as between a patron and someone who works at a bar, yeah.

THE COURT: Okay. Now, by pleading guilty to this, I could give you up to five years' imprisonment. Do you understand?

THE DEFENDANT: Yeah, I understand that, Your Honor.

THE COURT: Your lawyer has obtained a promise from the prosecutor that the other charges, the other counts, 1, 2, 3, 5 and 6, will be dismissed after you are sentenced. Do you understand that?

THE DEFENDANT: Yeah, I understand that.

THE COURT: I must also give you three years of

supervised release. I could impose a fine of a quarter million dollars, $100 special assessment.

It says forfeiture and restitution. What are we talking about?

MS. MEDETIS: Your Honor, there's not going to be any forfeiture in this case, and there will likely not be any restitution, though I'm confirming that with the victim.

THE COURT: What restitution would there be?

MS. MEDETIS: If there were any psychological harm requiring any sort of therapy, that sort of thing.

THE COURT: Oh, the best thing to do when you get something terrible like that is to delete it, don't you think?

MS. MEDETIS: I would agree, Your Honor.

THE COURT: Yeah. Unless it's kind of very repetitive, but I will find out more about it I guess in a couple of minutes.

This is how sentencing works, right?

What does the Government say the guidelines will be with acceptance of responsibility here?

MS. MEDETIS: Your Honor, conservatively, assuming a Criminal History Category of I, which I am not sure is the case it's --

THE COURT: You don't know the priors?

MS. MEDETIS: -- 33 to 41 months.

I think that the Criminal History Category may be a II,

but we're still working that out with defense counsel.

THE COURT: Well, what are his priors?

MS. MEDETIS: My understanding is that he has a prior for a burglary and he also has a prior for harassment.

THE COURT: Okay. So for Criminal History Category I, you're talking about what?

MS. MEDETIS: 33 to 41 months.

THE COURT: And for Criminal History Category II, you're talking about what?

MS. MEDETIS: I don't have the guidelines in front of me, Your Honor.

THE COURT: What happened to my book of the guidelines there, Shirley?

THE COURTROOM DEPUTY: I don't know.

THE COURT: What?

THE COURTROOM DEPUTY: You don't have one?

THE COURT: Yes, I have one, but I'm reluctant to give it because then I won't get it back. That's why I write my name on it. See, if I see somebody with it with my name on it, they better have the same name I do which could happen.

MS. MEDETIS: Your Honor, defense counsel has been kind enough to give me a copy of the matrix. I can give you that information.

THE COURT: Okay. What is that?

MS. MEDETIS: 37 to 46 months of a Criminal History

Category II.

THE COURT: Do you understand that, Mr. Lin?

THE DEFENDANT: Yes, I do, Your Honor.

THE COURT: Okay. How far did you go in school?

THE DEFENDANT: Last year of college.

THE COURT: Where?

THE DEFENDANT: University of Maryland.

THE COURT: Where are you from?

THE DEFENDANT: Originally I'm from the People's Republic of China. I was born there.

THE COURT: How long have you been in the United States?

THE DEFENDANT: I've been here for 30 years. I came here when I was four.

THE COURT: Okay. Have you been back to China?

THE DEFENDANT: Have I what?

THE COURT: Have you ever been back to China?

THE DEFENDANT: One time, 1994.

THE COURT: Okay. You're a United States citizen?

THE DEFENDANT: Yes, I am, Your Honor.

THE COURT: If for some reason you weren't, one of the things that could happen to you, if for some reason you weren't a citizen, is they could send you back -- they would send you back to China.

Do you understand that's a consequence of pleading

guilty and being found guilty?

THE DEFENDANT: Yes, I understand that.

THE COURT: Okay. Your lawyer, what your lawyer has done is -- we have a Sentencing Guidelines system, and he's convinced the prosecutor to recommend to me that if you accept responsibility for your actions, you should get points off. The more points that you have, the higher the suggested sentence. The more of a record that you have, it gets into a different category, a different column. That's how sentencing works.

A judge can nevertheless go above the guidelines, not above the maximum which is five years. A judge can go below the guidelines as long as the judge explains himself. Do you understand that?

THE DEFENDANT: I understand that.

THE COURT: Okay. If there are more than two threats, you get two extra points. If you intentionally selected the object of the offense based on nationality and ethnicity for saying something about that, then you get extra points, too. That's what they call level enhancements. It's kind of a classy way of saying it. I like to talk about it in points. The higher the number is with all the points, the higher the suggested sentence. Do you understand that?

THE DEFENDANT: Yes, I do.

THE COURT: Okay. And we'll skip the forfeiture part since we're not talking about anything, right? You don't want

him to forfeit a computer or anything?

MS. MEDETIS: That's correct, Your Honor, we will not be forfeiting.

THE COURT: Okay. You're giving up the right to appeal unless I give you more than the guidelines. Do you understand that?

THE DEFENDANT: Yes, I do, Your Honor.

THE COURT: Okay. What do you do for a living?

THE DEFENDANT: I just used to sell coins on eBay.

THE COURT: That's all you do?

THE DEFENDANT: Yeah, it's -- yeah, I don't really like a -- maybe my problem is I need a steady job or something, I don't know.

THE COURT: Okay. Well, I don't know if they still make license plates in prison, but you'll have a steady one for awhile. They don't pay much, though.

Have you ever been to -- I ask this of every defendant who pleads guilty. Have you ever been to a psychiatrist or a mental institution?

THE DEFENDANT: Yes, I have.

THE COURT: When was that, more or less?

THE DEFENDANT: 2010.

THE COURT: What were you suffering from that you needed mental health assistance?

THE DEFENDANT: I wasn't really -- it was a mental

health evaluation for my burglary charge.

THE COURT: For your what?

THE DEFENDANT: For my burglary charge. I was charged with burglary.

THE COURT: Your burglary charge. Okay. And what did the doctor say?

THE DEFENDANT: The doctor said --

THE COURT: Are you suffering from anything?

THE DEFENDANT: I don't believe I am right now.

THE COURT: Were you then?

THE DEFENDANT: The doctors, they had different opinions. One of them said, you had a psychotic break or a nervous breakdown. The other said, you don't have any kind of psychiatric issue.

THE COURT: And the judge decided one thing or another, right?

THE DEFENDANT: The judge decided to give me a suspended sentence.

THE COURT: Okay. Now, is there anything you don't understand based upon any mental health issue today?

THE DEFENDANT: No, there isn't.

THE COURT: Now, what I want you to do is listen closely to what the prosecutor is going to say you did in this case. If you disagree with anything that she says, you've got to let me know now. Remember, of course, you're under oath,

subject to the penalty of perjury if you lie. All right?

THE DEFENDANT: Okay.

THE COURT: Okay. Go ahead, lay a factual basis, please.

MS. MEDETIS: Yes, Your Honor.

The United States and Eric Lin a/k/a Jake Howard a/k/a Eric A. Schopenhauer, the defendant, hereby stipulate and agree that had this matter proceeded to trial, the United States would have offered evidence and testimony to establish the following factual basis beyond a reasonable doubt:

On or about July 24, 2019, the FBI received information from the City of Miami Police Department that an individual hereinafter referred to by his or her initials as CI, or the victim, received threatening messages on his or her Facebook account through the Direct Message or DM function from two Facebook accounts with the screen names Jake Howard and Eric A. Schopenhauer, hereinafter collectively the Target Accounts.

Subsequently, the FBI interviewed the victim who resides in Miami-Dade County in the Southern District of Florida. During the interview, the victim provided law enforcement with hard copy printouts of messages received from the Target Accounts. The printed messages totaled about -- or, I'm sorry, they totaled over 150 pages and contained threats to injure and/or kill the victim, the victim's family members and all Hispanics.

The messages also contained pro-Hitler and anti-Hispanic statements. In the messages from the Target Accounts, the sender called for the "extermination" of all Hispanics as well as other racial and ethnic groups. Notably, the victim is from Spain.

Based on the substance of the messages, the victim informed the FBI that he/she believed the messages came from an individual she knew as Eric Lin who frequented the victim's place of work, a restaurant in Key Biscayne. She believed the messages came from -- he or she believed the messages came from Eric Lin because Eric Lin's statements at the restaurant were similar in content to the Facebook messages sent by the Target Accounts to the victim.

In particular, both his statements in the restaurant and the messages from the Target Accounts discussed mass shootings and idolization of Adolf Hitler. The victim further advised law enforcement that messages from the Target Account caused him or her to fear for his or her life and the lives of his --

THE COURT: It's a her, right --

MS. MEDETIS: It is.

THE COURT: -- okay, based on what he said.

MS. MEDETIS: Correct.

THE COURT: Okay.

MS. MEDETIS: -- and the lives of his or her family

members. The investigation which included search warrants to Facebook Incorporated for the contents of the Target Accounts revealed that both accounts were linked to Lin as follows:

The username registered to Facebook screen name Eric A. Schopenhauer is Eric.a.lin.31149 and associated with a telephone number ending in 6072.

The username registered to Facebook screen name Jake Howard is Jake.howard.3154 and associated with a telephone number ending in 6072. The number ending in 6072 is an AT&T cellular telephone number registered to Lin's father. However, law enforcement linked this telephone number to Lin by calling the number on August 13, 2019 and asking for Lin. The individual who answered the call identified himself as Eric Lin and provided the same date of birth as that which appears on Lin's driver's license.

A review of the contents of the Target Accounts revealed that Lin sent hundreds of messages to the victim via DM or Direct Message and that many of those messages contained threats to kill the victim, the victim's family members and generally all Hispanics.

Lin began sending messages to the victim on May 30, 2019 and stopped sending messages on or about August 14, 2019. The May 30, 2019 message from Lin contained a photograph of Lin with a filter of Adolf Hitler superimposed on Lin's face stating;

"Composite of My Face with the Fuhrer und Reichskanzler Deutscheland."

The threatening messages that the defendant sent to the victim included the following: All of the messages included in this factual basis are copied as is from the defendant's Facebook accounts to include typographical errors.

On or about June 7, 2019, the defendant, using the Jake Howard Facebook account, sent the following message to the victim:

"In three short years your entire Race, your entire culture will Perish only then after I kill your Spic family will I permit you to Die by Hanging on Metal Wire."

On or about June 8, 2019, the defendant, using the Jake Howard Facebook account, sent the following message to the victim:

"I'm coming to Rape and kill you. I tried to be Nice, but you only see that as weakness." [sic]

On or about June 11, 2019, the defendant, using the Jake Howard Facebook account, sent the following message to the victim:

"I will stop at Nothing until you, your family, your friends, your entire WORTHLESS LATIN RACE IS RACIALLY EXTERMINATED!"

On or about June 12, 2019, the defendant, using the Jake Howard Facebook account, sent the following message to the

victim:

"You're always talking about Game of Thrones. How about we play a real GAME of Thrones. You lose and I cut you at your knees, watch you bleed before I cut your tongue out and shove it up your c-u-n-t and then decapitate that American-hating Spic head of yours."

On or about July 12, 2019, the defendant, using the Eric A. Schopenhauer Facebook account, sent the following message to the victim:

"I look forward to cutting you at your knees, Spaniard, and then cutting our your Heart and drinking every last drop of blood from your Veins, then eating your Flesh like eating Steak."

On or about July 15, 2019, the defendant, using the Jake Howard Facebook account, sent the following message to the victim:

"I will Cut you open and Drink your blood Until you Die! YOU PIECE OF AMERICAN HATING S-H-I-T."

The messages continued in this fashion through August 14, 2019.

On or about August 16, 2019, the defendant was arrested in Seattle, Washington. After waiving his Miranda rights in writing, the defendant admitted in a video recorded statement that the Jake Howard and Eric A. Schopenhauer accounts were his and that he had used them to send messages to the victim, CI,

threatening to kill him or her.

The above described threatening communications were transmitted in interstate commerce as follows:

According to cell site location information for the defendant's cell phone ending in 6072, the threats dated June 7th and 8th, 2019 were sent by defendant while the defendant was still located in the Southern District of Florida. However, Facebook does not have servers in Florida. Accordingly, the messages had to travel outside the state of Florida to Facebook servers before they reached the victim in the Southern District of Florida. Accordingly, those two communications traveled in interstate commerce before reaching the victim in the Southern District of Florida.

As for the remaining threatening communications dated June 11 and 12, 2019 and July 12 and 15, 2019, cell site records for the defendant's cell phone ending in 6072 show that the defendant was outside the state of Florida when the messages were sent to the victim. Accordingly, those four messages traveled in interstate commerce before reaching the victim in the Southern District of Florida. Additionally, all threatening communications discussed above were transmitted through the Internet which is an instrumentality of interstate commerce.

The United States and the defendant agree that the Stipulated Factual Basis, while not containing all facts known to the United States, is sufficient to satisfy all the elements

establishing the guilt of the defendant to the crime charged in Count 4 of the Indictment, that is, knowingly transmitting in interstate commerce a communication to injure the person of another, that is, victim CI, in violation of Title 18, United States Code Section 875(c).

THE COURT: Do you agree about what the prosecutor has stated you put in in these messages and everything that she has said?

THE DEFENDANT: Yes, I agree.

THE COURT: Where did all this come from? Are you obsessed with Hitler or something?

THE DEFENDANT: Not really. I just -- I wanted to get her attention, I guess. I was puzzled by why she never responded, and initially I didn't mention any of the killings or hurting her or whatever. I guess maybe her not responding made me snap or something.

THE COURT: Well, it's probably not the most flattering thing to say, it seems to me, if that's what you wanted. It's just strange, isn't it, that someone born in China would put things in an email with threats and praise Hitler and want to eliminate all Hispanics which is a big group here in Miami, too.

THE DEFENDANT: Yeah.

THE COURT: So I just wondered whether you have a history of ethnic hatred. What do you think? You think you have that?

THE DEFENDANT: I don't really think so. I mean, she is from Spain and --

THE COURT: And you're from China.

THE DEFENDANT: Yeah.

THE COURT: Okay. And everybody is from some place.

All right. So how do you plead, guilty or not guilty?

THE DEFENDANT: I plead guilty, yeah.

THE COURT: You understand you're giving up your rights to a trial by jury, trial before a judge, right to appeal, right to remain silent, right to confront and cross-examine Government witnesses, to bring witnesses on your own behalf, to be presumed innocent, to require the prosecutor to prove her accusations beyond a reasonable doubt, right to vote, right to carry a firearm. We already spoke about the immigration consequences.

You could also lose any special benefits by being a convicted felon like special housing benefits or welfare payments or that kind of a thing. You couldn't get pilot's licenses and things of that nature. All of that will result as a result of your conviction. Do you understand that?

THE DEFENDANT: Yes, I do.

THE COURT: Are you satisfied that your client is entering this plea freely, voluntarily, and that he's competent to do so?

MR. DUNHAM: Yes, Your Honor.

THE COURT: And you stipulate there's a factual basis

for this guilty plea after having reviewed the discovery?

MR. DUNHAM: Yes.

THE COURT: What questions have I forgotten to ask, if any, pursuant to Rule 11 of the Federal Rules of Criminal Procedure?

MS. MEDETIS: None, Your Honor.

THE COURT: I find you guilty, adjudicate you guilty, order a Presentence Investigation Report, and we'll see you March 30th at 9:45.

THE DEFENDANT: Thank you.

THE COURT: Other than the Plea Agreement, any other promises made to you?

THE DEFENDANT: No, there haven't been.

THE COURT: Okay. I think I asked you, but just in case. Okay. Thank you. See you then.

THE DEFENDANT: Thank you.

(The hearing concluded at 2:10 p.m.:)

C E R T I F I C A T E

I hereby certify that the foregoing is an accurate transcription of proceedings in the above-entitled matter.

01-18-21
DATE

GILDA PASTOR-HERNANDEZ, RPR, FPR
Official United States Court Reporter
Wilkie D. Ferguson Jr. U.S. Courthouse
400 North Miami Avenue, Suite 13-3
Miami, Florida 33128 305.523.5118
gphofficialreporter@gmail.com